IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
(HEARD AT KNOXVILLE)

FILED

April 12, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

FOR PUBLICATION

Filed: _____ April 12, 1999 _____

| | | |
|---|---|---|
| NATHAN BREWER, | ) | |
| | ) | |
| PLAINTIFF/APPELLEE, | ) | WAYNE COUNTY CIRCUIT |
| | ) | |
| v. | ) | Hon. Jim T. Hamilton, Judge |
| | ) | |
| LINCOLN BRASS WORKS, INC., | ) | No. 01S01-9609-CV-00196 |
| | ) | |
| DEFENDANT/APPELLANT. | ) | |

FOR APPELLANT:

MARK C. TRAVIS
COOKEVILLE

FOR APPELLEE:

JAY R. SLOBEY
NASHVILLE

# O P I N I O N

TRIAL COURT AFFIRMED IN PART,
REVERSED IN PART; CASE
DISMISSED WITHOUT PREJUDICE

HOLDER, J.

**OPINION**

We granted this appeal to address whether Tenn. Code Ann. § 50-6-231 precludes an enlargement of an award under § 50-6-241(a)(2) when the original award was paid in a lump sum. Upon review, we hold that a lump sum award may later be enlarged if the criteria in § 241(a)(2) are satisfied. We further hold that § 241(a)(2) is not applicable when there is either a subsequent injury or an aggravation of the original injury which increases a worker's anatomical disability.

**BACKGROUND**

The plaintiff, Nathan Brewer, began working for the defendant, Lincoln Brass Works, Inc. ("Lincoln"), in 1991. Mr. Brewer sustained a work-related injury to his back in December of 1992. He underwent two laminectomies as the result of the 1992 injury. He returned to work for Lincoln in August of 1993 at a wage equal to or greater than his pre-injury wage.

Mr. Brewer was assessed a 15 percent anatomical disability rating. Mr. Brewer received workers' compensation benefits based on a 37.5 percent permanent partial impairment to the body as a whole, with Lincoln's liability capped by the 2.5 multiplier in Tenn. Code Ann. § 50-6-241(a)(1)[1]. The award was paid in lump sum.

---

[1]"For injuries arising on or after August 1, 1992, in cases where an injured employee is eligible to receive any permanent partial disability benefits, . . . and the pre-injury employer returns the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of injury, the maximum permanent partial disability award that the employee may receive is two and one-half (2 ½) times the medical impairment rating . . . . In making determinations, the court shall consider all pertinent factors, including lay and expert testimony, employee's age, education, skills and training, local job opportunities, and capacity to work at types of employment available in claimant's disabled condition."

Mr. Brewer continued working at Lincoln for approximately ten months after his return to employment in August of 1993. He initially returned to a line job, which required sitting and repetitive stretching, bending, and twisting. He stated that the line job aggravated his back and caused his "leg to go numb." He then transferred to a janitorial position, but his pain became increasingly unbearable. His last day at work was June 20, 1994. Lincoln, however, stipulated that he was still an employee of Lincoln as of March 20, 1996.

Mr. Brewer was referred to an orthopedic surgeon, Dr. Allen. Dr. Allen diagnosed Mr. Brewer in September of 1994 as having a "very large recurring disc rupture at the L4-5 level." Dr. Allen opined that Mr. Brewer's prior surgeries to the L4-5 region rendered the disc "more susceptible to rupture." Dr. Allen, however, further testified that:

> I think the natural progression, degeneration takes some trauma to take place, whether it's trauma that is incidental twisting, turning, standing, sitting, rolling over in bed, sneezing, coughing, but presumably some trauma, even if it's not -- even if it's not something you can put a finger on and say this is the episode, but some trauma would be necessary to break this piece of disc loose and allow it to come out through the hole.

Dr. Allen performed a laminectomy on Mr. Brewer on January 9, 1995, and a second laminectomy on June 2, 1995. Dr. Allen testified that both the January and the June surgeries increased Mr. Brewer's anatomical impairment.

Mr. Brewer filed a petition for increased workers' compensation benefits pursuant to Tenn. Code Ann. § 50-6-241(a)(2).[2] The petition alleged he was no

---

[2]"[T]he courts may reconsider upon the filing of a new cause of action the issue of industrial disability. Such reconsideration shall examine all pertinent factors, including lay and expert testimony, employee's age, education, skills and training, local job opportunities, and capacity to work at types of employment available in claimant's disabled condition. Such reconsideration may be made in appropriate cases where the employee is no longer employed by the pre-injury employer and makes application to the appropriate court within one (1) year of the
(continued...)

longer "able to function in his previous employment" following the 1994 disc rupture and requested an enlargement of the 1992 award. The trial court awarded Mr. Brewer increased benefits. The workers' compensation panel reversed the trial court, finding:

1. Tenn. Code Ann. § 50-6-231 provides that lump sum payments shall be final and precludes increased benefits under § 241(a)(2) if the original award was paid in lump sum;

2. the petition for increased benefits was time barred because it was not filed within one year of June 20, 1994, the last day Brewer reported to work; and

3. the trial court failed to render specific findings of fact as required by § 50-6-241(c).

We granted review.

## ANALYSIS

An employer's workers' compensation liability is capped at 2.5 times the anatomical impairment rating when the employer returns an injured employee to work at a wage equal to or greater than the wage at the time of the injury. Tenn. Code Ann. § 50-6-241(a)(1).[3] If, however, the employer's attempts to

---

[2](...continued)
employee's loss of employment . . . ."

[3]Awards limited by the 2.5 multiplier may or may not be an accurate reflection of vocational disability. For instance, an injured worker may have sustained a 20 percent anatomical impairment. If the injured worker is returned to work at his prior wage, the employer's liability is limited at 50 percent even if expert testimony indicates that the injured worker's vocational disability is 90 percent.

4

accommodate an injured worker become futile, the worker may file for increased benefits under Tenn. Code Ann. § 241(a)(2). Pursuant to § 241(a)(2), a court may enlarge a workers' compensation award that was previously capped by the 2.5 multiplier in § 241(a)(1). Among the factors for consideration for enlargement of an award under § 241(a)(2) are the "employee's age, education, skills and training, local job opportunities, and capacity to work at types of employment available in the claimant's disabled condition." Increased anatomical impairments and subsequent injuries are not factors for consideration under § 241(a)(2). The focus is purely on the issue of industrial disability.

A petition to enlarge a previous award under § 50-6-241(a)(2) is not the appropriate vehicle to use when a worker sustains additional injuries or additional anatomical impairment. A § 241(a)(2) petition is proper when the injured worker attempts to return to work but the original work-related disability later renders the injured worker unemployable with the pre-injury employer. Section 241(a)(2) then allows the injured worker to receive a new industrial disability rating when the employer's attempts to accommodate the worker fail. The new disability rating is not limited by the § 241(a)(1) cap and is based on the worker's previous anatomical impairment rating. We hold that if the worker, however, sustains additional impairment, whether caused by a subsequent work-related injury or work-related aggravation injury or aggravation of the original injury, the worker must file a new claim for workers' compensation rather than attempting to enlarge a previous award under § 241(a)(2).

Mr. Brewer received an award of 37.5 percent attributable to his 1992 work-related injury to his lower back. He subsequently aggravated or re-injured his lower back. Expert testimony established that the aggravation or re-injury caused additional anatomical impairment. Accordingly, Mr. Brewer's claim

5

should have been filed as a new and separate action for workers' compensation benefits.

## LUMP SUM PROVISION

We granted this appeal to address whether Tenn. Code Ann. § 50-6-231 prohibits petitions to enlarge previous awards under § 241(a)(2). Pursuant to § 231, "[a]ll amounts paid by the employer and received by the employee . . . by lump sum payments, shall be final . . . ." Section 241(a)(2) permits an injured worker whose workers' compensation benefits were capped by § 241(a)(1) to seek an enlargement of the capped award "in appropriate cases where the employee is no longer employed by the pre-injury employer . . . ." Our holding that Mr. Brewer's cause of action cannot be sustained under § 241(a)(2) has rendered this issue moot. We, however, will address this important legal issue.

Initially, we note that statutes shall be construed in light of the purposes the legislature intended to accomplish by their passage. Business Brokerage Ctr. v. Dixon, 874 S.W.2d 1, 5 (Tenn. 1994). Section 241 was codified to promote uniformity in workers' compensation awards. Brown v. Campbell County Bd. of Educ., 915 S.W.2d 407, 414 (Tenn. 1995). Permitting enlargement of awards ordered paid in periodic payments but not lump sum awards is inconsistent with § 241's policy of promoting uniformity of awards.

The language in § 241 provides an avenue for an enlargement of awards without regard to whether the original award was paid in lump sum or periodic payments. Section 241 was codified after the codification of § 231. Where two statutes conflict and cannot be reconciled, the prior act will be repealed or amended by implication to the extent of the inconsistency between the two

6

statutes. <u>Steinhouse v. Neal</u>, 723 S.W.2d 625, 627 (Tenn. 1987); <u>State v. Moore</u>, 722 S.W.2d 367, 374 (Tenn. 1986). Specific statutory provisions generally prevail over general provisions when there is a conflict between statutes. Tenn. Code Ann. § 1-3-103; <u>see</u> <u>also</u> <u>Moore</u>, 722 S.W.2d at 374; <u>State v. Nelson</u>, 77 S.W.2d 465, 466 (Tenn. Crim. App. 1978). Accordingly, we hold that § 241(a)(2) controls over the provisions of § 231 to the extent the two statutes conflict. A petition under § 241(a)(2) is not prohibited in a case where the original workers' compensation award sought to be enlarged was paid in lump sum.

## STATUTE OF LIMITATIONS

Mr. Brewer suffered increased pain while working and was unable to continue working in June of 1994. He was referred to Dr. Allen who performed a myelogram in September of 1994 The results of the myelogram revealed a "large recurrent disc rupture at the L4-5 level." Accordingly, the full nature and extent of his injury was not manifested until Dr. Allen discovered the ruptured disc. <u>See</u> <u>Union Carbide Corp. v. Cannon</u>, 523 S.W.2d 360 (Tenn. 1975) (holding limitations period began to accrue upon discovery of the herniated disc and not from the date of the accident). Mr. Brewer's statute of limitations for a new claim of workers' compensation began to accrue upon the September 1994 discovery date.

## CONCLUSION

The plaintiff's petition for an enlargement of a previous award is dismissed. The plaintiff's remaining issue concerning the trial court's findings under § 241(c) has been rendered moot. Our analysis of the application of

7

§ 241, however, addressed an issue of first impression, and the defendant has not been prejudiced by lack of timely notice of Mr. Brewer's attempt to obtain additional workers' compensation benefits. The plaintiff's cause of action is, therefore, dismissed without prejudice. Costs of this appeal shall be taxed against the plaintiff for which execution may issue if necessary.

 

 

JANICE M. HOLDER, JUSTICE

**CONCURRING:**

Anderson, C.J.
Birch and Barker, J.J.
Tipton, Sp.J.

Drowota, J., Not Participating