Wilma Jean NEWTON,
Plaintiff–Appellee,

v.

SCOTT HEALTH CARE CENTER,
a subsidiary of National Health
Corp., Defendant–Appellant.

Supreme Court of Tennessee,
Special Workers' Compensation
Appeals Panel.

Dec. 15, 1995.

Paul B. Plant, J. Jay Cheatwood, Harwell, Plant & Cheatwood, Lawrenceburg, for Appellant.

Paul A. Bates, Christopher V. Sockwell, Boston, Bates & Holt, Lawrenceburg, for Appellee.

Before DROWOTA, J., JOHN K. BYERS, Senior Judge, and JOE C. LOSER, Jr., Special Judge.

### MEMORANDUM OPINION

JOHN K. BYERS, Senior Judge.

This workers' compensation appeal has been referred to the Special Workers' Compensation Appeals Panel of the Supreme Court in accordance with TENN.CODE ANN. § 50–6–225(e)(3) for hearing and reporting to the Supreme Court of findings of fact and conclusions of law.

Plaintiff injured her back while lifting a patient at work. The parties stipulated compensability of the injury. The trial judge awarded 60 percent permanent partial disability to the body as a whole, to be paid in lump sum. The defendant contends the disability award should be limited under TENN. CODE ANN. § 50–6–241(a) and that lump sum payment was improper.

We affirm the lump sum award but modify the amount of disability to two and one-half times the medical impairment rating, as required by TENN.CODE ANN. § 50–6–241(a).

Plaintiff is 60 years old and has a tenth grade education. She has held two jobs out-side the home during her lifetime, both of which she held at the time of her injury and at the time of trial: (1) school bus driver; (2) nursing assistant. She held the school bus driving job for thirteen years and then added a second job as nursing assistant, which she has held for an additional seven years while continuing to drive the school bus. The defendant allowed her throughout her work years as a nursing assistant to come to work one hour late so as to accommodate her bus driving schedule.

On April 24, 1993, plaintiff injured her back while lifting a patient at the nursing home. Myelogram and CT scan revealed a lumbar disk defect at L–2/3 on the right, and she underwent lumbar laminectomy. She had residual medically documented pain and rigidity of the lumbar spine, and the surgeon assessed 10 percent permanent partial impairment to the body as a whole. He limited her to lifting a maximum of 40 pounds and frequent lifting of no more than 20 pounds, to standing or sitting six hours of an eight hour day, and no climbing.

When the plaintiff was released to return to work, she requested her former work schedule of 4:00 p.m. to 11:00 p.m. so that she could also continue working as a bus driver. She was told that the employer's needs had changed and it would no longer be possible for her to receive special consideration as to shift hours. She was given her choice as to which of the three shifts she wanted to work. Because of time conflict with the bus schedule, plaintiff opted not to continue full-time with the nursing job, but rather to work only on week-ends or when school was out. She did return to her regular bus driving job. The employer testified that no other employees received special consideration as to schedule hours and that they were unable to continue this concession because the facility had increased its number of patients.

TENN.CODE ANN. § 50–6–241(a)(1) provides:

**Maximum permanent partial disability award for causes arising on or after**

**August 1, 1992—Reconsideration of industrial disability.**—(a)(1) For injuries arising on or after August 1, 1992, in cases where an injured employee is eligible to receive any permanent partial disability benefits, pursuant to § 50–6–207(3)(A)(i) and (F), and the pre-injury employer returns the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of injury, the maximum permanent partial disability award that the employee may receive is two and one-half (2–½) times the medical impairment rating determined pursuant to the provisions of the American Medical Association Guides to the Evaluation of Permanent Impairment (American Medical Association), the Manual for Orthopedic Surgeons in Evaluating Permanent Physical Impairment (American Academy of Orthopedic Surgeons), or in cases not covered by either of these, an impairment rating by any appropriate method used and accepted by the medical community. In making determinations, the court shall consider all pertinent factors, including lay and expert testimony, employee's age, education, skills and training, local job opportunities, and capacity to work at types of employment available in claimant's disabled condition.

In the case of *Joe Baily v. Krueger Ringier, Inc., d/b/a Ringier America,* (Weakly County, No. 02S01–CH–00061, filed at Jackson May 17, 1995, adopted by the Supreme Court per curiam), a Workers' Compensation Panel approved a ruling by the trial judge who construed the meaning of the words "and the pre-injury employer must return the employee to employment ..." in TENN. CODE ANN. § 50–6–241(a)(1). The court held that a return to work that the employee is unable to perform because of his injuries is not a meaningful return to work. Based on this, the trial court held the worker was not limited to the two and one-half times the percent of medical impairment multiplier provided by the statute, but that he could recover up to six times the medical impairment as set out in the statute.

There will be a variety of factual situations wherein the courts will be required to construe the meaning of the words in question here. The ultimate resolution of their meaning will be leavened by an assessment of the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to return to work.

If the offer from the employer is not reasonable in light of the circumstances of the employee's physical ability to perform the offered employment, then the offer of employment is not meaningful and the injured employee may receive disability benefits up to six times the amount of the medical impairment. On the other hand, an employee will be limited to disability of two and one-half times the medical impairment if his refusal to return to offered work is unreasonable. The resolution of what is reasonable must rest upon the facts of each case and be determined thereby.

In the case before us, we find the refusal of the employee to return to work to be unreasonable. Therefore, under TENN. CODE ANN. § 50–6–241(a)(1), her disability must be limited to two and one-half times the medical impairment rating.

Dr. Arthur Cushman, board-certified neurosurgeon and treating physician, assessed 10 percent permanent partial disability to the body as a whole according to A.M.A. Guidelines. Dr. Verne E. Allen, board-certified neurologist, also assessed 10 percent permanent partial disability to the body as a whole. Therefore, plaintiff's vocational impairment must not exceed two and one-half times the ten percent medical impairment, or a total of twenty five percent vocational disability. We modify the award of disability from sixty percent to twenty five percent.

Defendant next argues that lump sum award was improper in this case.

The standard for award of lump sum payment is set out in TENN.CODE ANN. § 50–6–229. The statute provides:

In determining whether to commute an award, the trial court shall consider whether the commutation will be in the best interest of the employee, and such court shall also consider the ability of the employee to wisely manage and control the commuted award irrespective of whether there exist special needs.

The record shows that plaintiff and her husband have retirement income sufficient to meet their needs and that they would invest a lump sum payment to draw interest, to replace the roof on their home and to replace their seventeen year old automobile. Since the plaintiff has sufficient regular income and does not need monthly payments, it is in her best interest to have a lump sum payment to invest on capital improvements to her home, transportation needs and to draw interest. She has never filed bankruptcy and she and her husband live on retirement and social security benefits, indicating that they are able to manage funds wisely.

The award of disability benefits is modified from sixty percent to twenty five percent and the award of lump sum benefits is affirmed. Costs of the appeal are assessed to the plaintiff.

DROWOTA, J., and JOE C. LOSER, Special Judge, concur.